UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.P., by and through her
Next Friend, MARK PYSCHER,

          Plaintiffs,              Civil Case No. 19-12744
                                        Honorable Linda V. Parker

v.

A.P., JOSE PARADES,
and LYNETTE PEPPLER,

          Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT LYNETTE PEPPLER'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 49]

This lawsuit involves the bullying, harassment, and physical assault of

Plaintiff A.P. (hereafter "Plaintiff") by her high school peers during the 2017-2018

academic year, while Plaintiff was a ninth-grade student at Genesee Early College

("GEC").  Plaintiff adheres to the Apostolic Pentecostal faith.  Plaintiff's peers

harassed her based on her religious beliefs and practices, including the practice of

maintaining a modest appearance.  Defendant A.P. is one of Plaintiff's classmates,

and Defendant Jose Parades is A.P.'s father.  Defendant Lynette Peppler was the

Dean of Students and a counselor at GEC during the school year that the incidents

occurred.  Plaintiff claims that Peppler violated her constitutional rights and was

grossly negligent in her failure to protect Plaintiff from bullying and abuse.

In a Complaint filed in state court and removed to federal court on September 19, 2019, Plaintiff, through her father Mark Pyscher, alleges the following claims:

I.      Violation of Plaintiff's Fourteenth Amendment Rights Pursuant to 42 U.S.C. § 1983 as to Defendant Lynette Peppler;

II.     Violation of Plaintiff's First Amendment Rights Pursuant to 42 U.S.C. § 1983 as to Defendant Lynette Peppler;

III.    Gross Negligence as to Defendant Lynette Peppler;

IV.     Assault and Battery as to Defendant [A.P.], and as to Defendant Jose Paredes by Vicarious Liability Pursuant to MCL 600.3913.

(Compl., ECF No. 1 (capitalization removed).)  Plaintiff settled her claim against Defendants A.P. and Jose Paredes and a stipulated order of dismissal as to Count IV of her Complaint was entered on December 16, 2020.  (ECF No. 41.)

The matter is presently before the Court on Peppler's Motion for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 49.)  The motion has been fully briefed.  (ECF Nos. 53, 55.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*, 477 U.S. at 255.

## II.   Factual Background

Plaintiff is a Christian who believes in one God, that she should wear skirts, and that her hair should be uncut as the Bible instructs her.  (Pl. Dep. at 7, ECF No. 49-5 at Pg ID 345.)  She considers herself to be a strict Apostolic Pentecostal.  (*Id.*) Plaintiff's friends at GEC had been A.W., M.W., A.P., and B.S.  (*Id.* at 12, Pg ID 347.)  A.W. and M.W. are collectively known as "the twins."  Most of the friends grew up together and have known each other since the first grade.  (*Id.*)

Peppler worked at GEC from 2008 until 2019, when she retired.  (Peppler Dep. at 9-10, ECF No. 49-2 at Pg ID 244.)  Margaret Green worked alongside Peppler as the principal during the 2017-2018 school year, and Green and Peppler were supervised by Dr. Mary Behm, the Assistant Superintendent of the Genesee Intermediate School District.  (Margaret G. Dep. at 7, ECF No. 49-3 at Pg ID 271.) Only Peppler handled the bullying incidents at issue, however.

A.P. and the twins began to bully Plaintiff in September 2017.  (Pl. Dep at 14-15, ECF No. 49-5 at Pg ID 347.)  At the time, they were all in the ninth grade together at GEC.  (Peppler Dep. at 73, ECF No. 49-2 at PG ID 260.)  Plaintiff explained that "[t]hey targeted my religious beliefs[,] said that my hair was ugly and that I should shave it bald[,] and that I should wear pants to be like everybody

else." (Pl. Dep. at 15, ECF No. 49-5 at Pg ID 345.)  Around December of 2017, one of the twins told Plaintiff that she looked like a pilgrim and that her hair looked bad and needed to be cut.  (*Id*. at 57, Pg ID 358.)  A.P. told Plaintiff that she should get her ears pierced.  (*Id*. at 71, Pg ID 361.)

On October 2, 2017, Mr. Pyscher met with Peppler to share his concern that another student, C.K., made comments to Plaintiff indicating that she was better than Plaintiff, which made Plaintiff feel uncomfortable.  (Peppler Dep. at 35-36, 41, ECF No. 49-2 at Pg ID 250, 252; *see also* M. Pyscher Dep at 8, ECF No. 49-6 at Pg ID 366.)  According to Peppler, nothing she was told about C.K.'s conduct suggested that C.K. was commenting about Plaintiff's religion, dress, or appearance.  (*Id*. at 35-37, Pg ID 250-251.)  However, Mr. Pyscher testified during this litigation that C.K.'s comments were related to Plaintiff's religious beliefs, hair, lack of makeup, and the dresses she wore.  (M. Pyscher Dep. at 8, ECF No. 49-6 at Pg ID 366.)

Peppler assured Mr. Pyscher that she would address the issue with C.K. (Peppler Dep. at 39, ECF No. 49-2 at Pg ID 251.)  Peppler met with C.K. that same day and reviewed the behavior expectations at GEC, explained that C.K.'s comments made Plaintiff uncomfortable, and warned that further action would be taken if the inappropriate behavior continued.  (*Id*. at 42-43, Pg ID 252.)  Peppler noted that C.K. was responsive, attentive, respectful, and remorseful.  (*Id*. at 45, Pg

ID 253.)  After Peppler spoke to C.K., C.K.'s comments to Plaintiff stopped.  (M. Pyscher Dep. at 8-9, ECF No. 49-6 at Pg ID 366-67.)

In December 2017, A.P. pushed Plaintiff out of a chair and Plaintiff's hip struck the metal bar of a table.  (Pl. Dep. at 30-32, ECF No. 49-5 at Pg ID 351.) Plaintiff was not injured and she did not require medical treatment as a result of the incident.  (*Id*. at 31.)  The classroom teacher, Mr. Newsome, was not present at the time of the incident, and Plaintiff did not report the incident to him.  (*Id*.) However, in late January 2018, Plaintiff reported the incident to Peppler and her parents.  (*Id*.; *see also id*. at 22, 26, Pg ID 349-50.)  A.P. admitted that she pushed Plaintiff out of the chair, but claims the incident occurred on January 17, 2018. (A.P. Dep. at 29, ECF No. 49-8 at Pg ID 425.)  Mr. Pyscher sought criminal charges against A.P. as a result of the incident.  (M. Pyscher Dep. at 28, ECF No. 49-6 at Pg ID 371).  A.P. later pled guilty to criminal charges of assault and battery. (A.P. Dep. at 48, ECF No. 49-8 at Pg ID 444.)

In January 2018, Peppler met Plaintiff and her parents in Peppler's office after Plaintiff's parents reported receiving a text message from Plaintiff, requesting that she leave school early.  (Peppler Dep. at 27, 47, ECF No. 49-2 at Pg ID 248, 253.)  According to Peppler, she was informed that Plaintiff is Apostolic Pentecostal for the first time at the meeting.  (*Id*. at 26, ECF No. 49-2 at Pg ID

248.)  Plaintiff testified, however, that she informed Peppler of her religious beliefs and practices in October 2017.  (Pl. Dep at 54, ECF No. 49-5 at Pg ID 357.)

At the meeting, Plaintiff told Peppler that the twins were bullying her based on her long hair and dresses.  (Peppler Dep. at 47-48, ECF No. 49-2 at Pg ID 253.)  In response, Peppler launched an investigation and met with the twins.  (*Id*. at 52-53, Pg ID 254-55.)  Peppler spoke with the twins that same day and informed them that their comments made Plaintiff feel uncomfortable and were inappropriate at GEC.  (*Id*. at 53, Pg ID 255.)  Peppler testified that the twins were so distraught during this meeting that one of them urinated on her chair.  (*Id*.)

A day or two later, Plaintiff again texted her parents asking to leave school early, so Peppler scheduled a follow-up meeting with Plaintiff, Plaintiff's parents, the twins, and their mother.  (*Id*. at 56, Pg ID 255.)  Plaintiff's father also requested that A.P. or her parents attend the meeting, but they were not present.  (M. Pyscher Dep. at 27, ECF No. 49-6 at Pg ID 371.)  During the meeting, Peppler listened to both sides and concluded that, from Plaintiff's perspective, she was upset because the twins were making comments about how she dressed and, from the twins' perspective, they were asking innocent questions.  (*Id*. at 59, Pg ID 256.)

At one of these meetings in late January or early February 2018, Plaintiff's father also told Peppler that A.P. told Plaintiff that she was her target and that she would not leave her alone.  (M. Pyscher Dep. at 27, ECF No. 49-6 at Pg ID 371.)

During the lunch period on February 2, 2018, Plaintiff overheard A.P. and
the twins state, "here she goes again," and claims they laughed at her.  (Pl. Dep. at
28, ECF No. 49-5 at Pg ID 350; *see also* Peppler Dep. at 60, ECF No. 49-2 at Pg
ID 256.)  Plaintiff interpreted their comment to be referring to Plaintiff's reports to
Peppler about their bullying.  (Pl. Dep. at 59, ECF No. 49-5 at Pg ID 358.)  On this
same date, Plaintiff withdrew from GEC.  Mr. Pyscher completed the GEC Exit
Form and stated that Plaintiff's reason for leaving GEC was bullying and an unsafe
educational environment.  (M. Pyscher Dep. at 18, ECF No. 49-6, Pg ID 369; GEC
Exit Form, ECF No. 53-10 at Pg ID 584.)  Peppler testified that she had planned to
counsel the students further about their behavior towards Plaintiff; however,
Plaintiff's departure prevented her from doing so.  (Peppler Dep. at 62, ECF No.
49-2 at Pg ID 257.)

According to Mr. Pyscher, on the day he filled out the exit form for Plaintiff,
Peppler asked to speak to him but he declined, indicating that "[they] were done
talking."  (M. Pyscher Dep. at 18, ECF No. 49-6, Pg ID 369.)  According to Mr.
Pyscher, Peppler "was really smart ale[c]ked about it", wished Plaintiff good luck
in her future, and then said that the girls had not done anything wrong in her eyes.
(*Id.*)  Mr. Pyscher testified that Peppler continued and said:

> If [Plaintiff] wants to make it in life, she needs to change a few things,
> maybe her hair style and her make up.  She talked about that and she
> talked about to get along in life sometimes you got to make changes.
> She said, that the girls, she knew the girls were picking on her for her

religious beliefs and for the way she dressed, her hair, her music and everything.

(*Id.*)  Peppler testified, however, that the father declined to speak to her at the advice of his attorney.  (Peppler Dep. at 62, ECF No. 49-2 at Pg ID 257.)  She denies ever telling Plaintiff that she needed to assimilate or conform by changing her appearance.  (*Id*. at 75, Pg ID 260.)

Despite Plaintiff's departure from GEC, Peppler continued to investigate the conduct of her peers.  (Peppler Dep. at 69-71, ECF No. 49-2 at Pg ID 259.)  She talked to A.P. twice, and both times A.P. denied pushing Plaintiff.  (*Id.* at 66, Pg ID 258.)  Eventually A.P. admitted that she playfully pushed Plaintiff.  (*Id*. at 67.)  Peppler shared this information with the GEC police liaison and with her supervisor, Dr. Behm.  (*Id*. at 71-72, Pg ID 259.)  Peppler also investigated the cafeteria bullying incident and spoke to each of the students involved.  (*Id*. at 63-65, Pg ID 257-58.)  The students admitted that they were talking about Plaintiff.  (*Id*. at 64, Pg ID 257.)  In response, Peppler counseled the students on the importance of respecting other students' feelings, went over GEC's expectations, and warned them that further action would be taken if they failed to meet GEC's expectations.  (*Id*. at 64-65, Pg ID 257-58.)

On April 2, 2018, Plaintiff began mental health treatment at Hurley Mental Health Associates with an intake assessment.  (Hurley Mental Health Records, ECF No. 53-11 at Pg ID 586-594).  Plaintiff was found to have a history of being

bullied and isolative.  (*Id*. at Pg ID 587).  She was diagnosed with dysthymic

disorder, persistent depressive disorder, and oppositional defiant disorder.  (*Id*. at

Pg ID 590, 591, 593.)

### III.    Peppler's Motion & Plaintiff's Response

Peppler seeks summary judgment with respect to Plaintiff's § 1983 claims

against her (Counts I and II), arguing that Plaintiff cannot establish a constitutional

violation.  (Br. in Support of Mot., ECF No. 49 at Pg ID 212-213.)  Alternatively,

Peppler claims she is entitled to qualified immunity.  (*Id*. at Pg ID 231-32.)

Peppler also moves for summary judgment to the extent she is sued in her official

capacity, maintaining that Plaintiff fails to plead a claim pursuant to *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978).  (*Id*. at Pg ID 232-33.)

Finally, Peppler maintains that she is entitled to governmental immunity under

Michigan Compiled Laws Section 691.1407(2) with respect to Plaintiff's gross

negligence claim (Count III), as her conduct did not constitute "gross negligence"

and was not the proximate cause of Plaintiff's injuries.

In response to Peppler's motion, Plaintiff concedes that her § 1983 claim

against Peppler in her official capacity should be dismissed; however, she argues

that her remaining claims against Peppler are viable.  (Pl. Resp. Br., ECF No. 53 at

Pg ID 457, 488.)

## IV.    Applicable Law & Analysis

### A.    Substantive Due Process

The Due Process Clause of the Fourteenth Amendment protects against state actions which deprive a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  As a general rule, the Due Process Clause does not protect persons against such deprivations caused by private actors.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1985) (explaining that the purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other."); *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 853 (6th Cir. 2016).  There are two exceptions to this rule, however.  First, "where the State enters into a 'special relationship' with an individual by taking that person into its custody[.]"  *Stiles*, 8109 F.3d at 853 (citing *DeShaney*, 489 U.S. at 195).  Second, "where the State creates or increases the risk of harm to an individual."  *Id.* (citing *DeShaney*, 489 U.S. at 195).  The latter exception is referred to as the "state-created danger" doctrine.  *Id*. at 854; *see also DeShaney*, 489 U.S. at 201 (explaining "[w]hile the State may have been aware of the dangers that [plaintiff] faced, *it played no part in their creation, nor did it do anything to render him more vulnerable to them*.") (emphasis added).

11

Plaintiff relies on the state-created danger doctrine to establish her substantive due process claim against Peppler.  (Pl. Resp. Br., ECF No. 53 at Pg ID 473.)  To prevail under this doctrine of liability, a plaintiff must show "(1) an affirmative act that creates or increases the risk to the plaintiff, (2) a special danger to the plaintiff as distinguished from the public at large, and (3) the requisite degree of state culpability."  *Stiles*, 819 F.3d at 854 (citing *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006)).  "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it."  *Id*. (citing *Jasinski v. Tyler*, 729 F.3d 531, 539 (6th Cir. 2013)).

Plaintiff fails to demonstrate that any risk to her was created or increased due to an affirmative act by Peppler.  Plaintiff alleges in her Complaint that Peppler failed to fulfill her duties and ignored her complaints of harassment.  (*See* Compl. ¶¶ 44-45, ECF No. 1-1 at Pg ID 12.)  However, "failing to enforce the law, failing to enforce school policy, and failing to refer assaults to [the police] are plainly omissions rather than affirmative acts."  *Stiles*, 819 F.3d at 855.  Similarly, "[f]ailing to punish or insufficiently punishing [wrongdoers] is generally not an affirmative act, and, even where it is, it typically does not create or increase the plaintiff's risk of harm."  *Id.* at 854 (collecting cases ruling that school officials'

failure to stop the harassment and bullying of a student by other students did not result in a state-created danger).

Plaintiff asserts that Peppler engaged in an affirmative act when she told Plaintiff that she needed to conform and should change her appearance and dress. (Pl. Resp. Br., ECF No. 53 at Pg ID 476.)  Plaintiff, however, offers no evidence suggesting that any student was present when Peppler allegedly made these comments.  Thus, while such comments would be highly inappropriate, the Court cannot conclude that they created or increased any risk to Plaintiff.

The Sixth Circuit found that a plaintiff pled a plausible substantive due process claim due to school officials' failure to respond in *Shively v. Green Local School District Board of Education*, 579 F. App'x 348 (2014).  However, in that case, the plaintiff was subjected to regular physical abuse and verbal bullying, in person and online, on a daily basis and for several years.  *Id*. at 350-51.  Two physical assaults on the plaintiff resulted in her needing medical attention.  *Id.* at 354.  Despite being informed of the bullying and harassment repeatedly, school officials did nothing to stop or diminish it.  *Id.* at 351-52.  The court concluded that the "[d]efendants' alleged decision not to enforce rules against bullying or punishments for bullying gave students license to act with impunity."  *Id.* at 356. The court stated further: "We decline to establish a standard in which 'dereliction of duty becomes a school's best defense,' particularly in cases such as this where it

'enables a pattern of physical abuse to persist,' *Morrow v. Balaski*, 719 F.3d 160,

196 (3d Cir. 2013) (Fuentes, J. dissenting), and would reasonably be expected to

embolden them to continue to escalate their abuse." *Id*.

The *Shively* court distinguished cases where school officials took some

action to address student-on-student misbehavior, even if the response was only

telling the perpetrator to stop, meeting with students, and communicating with

parents. *Id*. (discussing cases). Peppler undisputedly met with the students

reported to be bullying Plaintiff, met with the twins' mother, and warned the

students that their behavior was unacceptable at GEC. Moreover, the current

action does not involve the "pattern of bullying and violence" at issue in *Shively*.

*Id*. at 356. Notably, prior to late January 2018, Peppler was informed only of

C.K.'s bullying of Plaintiff and Peppler acted in response to that report. It was

only shortly before Plaintiff withdrew from GEC that Peppler was informed of the

harassment from additional students. (*See* Pl. Dep at 22, ECF No. 49-5 at Pg ID

349.)

Plaintiff cites an unpublished decision by the District Court for the Northern

District of Illinois to support her theory of liability. (Pl. Resp. Br., ECF No 53 at

Pg ID 476-77 (citing *Black v. Littlejohn*, No. 19 C 2585, 2020 WL 469303 (N.D.

Ill. Jan. 28, 2020)).) In that case, however, the defendant-teachers participated in

mocking and bullying the plaintiff in front of other students who physically and

14

verbally harassed the plaintiff.  *Id.* at *4.  The court concluded that the teacher's

conduct "instigated, created, or increased the bullying that [the plaintiff]

experienced at school."  *Id*. at *4.  There is no evidence in the present case that

Peppler called Plaintiff names, mocked, or otherwise verbally abused her in front

of her peers.

      Moreover, Plaintiff cannot establish the requisite degree of culpability to

hold Peppler liable under the state-created danger theory.  The Sixth Circuit

utilizes a deliberate-indifference standard to evaluate this requirement in instances

"when officials have the opportunity for reflection and unhurried judgments."

*Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir.)

(internal quotation marks and citations omitted), cert. denied sub nom. *Doe v.*

*Jackson Loc. Sch. Dist. Bd. of Educ.*, 141 S. Ct. 895 (2020).  This deliberate

indifference standard has two parts.  *Id.*

      First, the "official must 'be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and [the official] must also

draw the inference.'"  *Id*. (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 513

(6th Cir. 2002)) (additional citation omitted).  Second, "'[h]aving drawn the

inference,' the official must next 'act or fail to act in a manner demonstrating

reckless or callous indifference' toward the individual's rights."  *Id*. (quoting

*Ewolski*, 287 F.3d at 513).  "Given the call for caution in this area, [Sixth Circuit]

cases set demanding rules for both parts of this standard." *Id.* (internal citation omitted).

Plaintiff does not meaningfully address how the risk of harm was so obvious that Peppler should have known about it. With respect to A.P., Peppler argues that there were no previously reported issues between Plaintiff and A.P., and A.P. did not have a history of physically assaulting other students. (Br. in Support of Mot., ECF No. 49 at Pg ID 221-22.) Plaintiff did not initially report the incident involving A.P. to Peppler, the classroom teacher, or her parents because "she didn't want to make a big deal out of everything." (Pl. Dep. at 30-32, ECF No. 49-5 at Pg ID 351.) It was at the meetings in January—shortly before Plaintiff left GEC—when Peppler and Plaintiff's parents became aware of the incident, which Plaintiff recalled happening in November or December. (*Id.* at 34, Pg ID 352.) As such, the Court finds that Peppler did not have sufficient knowledge of any risk that A.P. posed to Plaintiff.

For similar reasons, Peppler could not have known that the twins or C.K. posed a risk of "bullying" or "harassing" Plaintiff about her religious beliefs. Peppler explained that the bullying or harassment did not have a long history and that she believed the student were friends because they were friends during the first semester of the year and that "[y]ou didn't see one without the other." (Peppler

Dep at 48-49, ECF No. 49-2 at Pg ID 253-54.)  Again, Plaintiff did not report the alleged pattern of bullying until January 2018, shortly before she left GEC.

In any event, even if Peppler was aware of facts from which she could discern a risk of harm, Plaintiff must show that she acted or failed to act in a manner demonstrating "reckless or callous indifference" to Plaintiff's rights.  "[T]o act with reckless or callous indifference, a public official must do more than be aware of a substantial risk of serious harm." *Jackson Local Sch. Distr.*, 954 F.3d at 934 (internal citations and quotation marks omitted).  The official's response must reflect "callous disregard for the risk of injury," or action "in an arbitrary manner that shocks the conscience or that indicates an intent to injure[.]" *Schroder v. City of Ft. Thomas*, 412 F.3d 724, 730 (6th Cir. 2005) (internal citations and quotation marks omitted).  Peppler investigated and responded to each complaint made by Plaintiff or her parents.  She met with Plaintiff's parents on at least two occasions, investigated Plaintiff's claims, and informed a school safety liaison about the chair assault incident once she became aware of it.  Following the C.K. complaint, Peppler spoke with C.K. and her parents about GEC's expectations and that the inappropriate behavior needed to stop.  She similarly met and counseled the twins, and met with their mother.  Measured against these standards, the evidence does not support a finding that Peppler actions were "conscience shocking."

For these reasons, Plaintiff's substantive due process claim against Peppler based on the state-created danger doctrine fails as a matter of law.

### B.     Equal Protection

In support of her equal protection claim, Plaintiff claims that she suffered "harassment because of her religion and that [Peppler] not only turned a blind eye . . . but [also] advised Plaintiff that she needed to forego her religious beliefs and conform to the image that Plaintiff's bullies desired." (Pl. Resp. Br., ECF No. 53 at Pg ID  481-82.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Accordingly, the Equal Protection Clause prohibits states from "making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).)  The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, *see Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999), and (2) deliberate indifference to discriminatory peer harassment, *see*

*Shively*, 579 F. Appx. at 356-57; *Port Huron*, 455 F. Appx. at 618.  Stated another way, a plaintiff "must show either that the defendants intentionally discriminated or acted with deliberate indifference."  *Shively*, 579 F. Appx. at 357.  Plaintiff's equal protection claim fails under either theory.

### 1.    Disparate Treatment

To prove her equal protection claim under a disparate treatment theory, Plaintiff must show that her complaints of peer harassment were treated differently than similar complaints by non-Apostolic Pentecostal students.  *See Stiles*, 819 F.3d at 852 (citing *Soper*, 195 F.3d at 852).  Like the plaintiffs in *Stiles* and *Soper*, Plaintiff fails to present evidence to show how Peppler treated other students, who were non-Apostolic Pentecostal or even non-Christian, who similarly complained about or suffered from bullying.  The facts Plaintiff identifies to support her claim (*see* Pl. Resp. Br., ECF No. 53 at Pg ID 482-83) do not provide any indication of how Peppler treated similar complaints by other students.  Instead, those facts speak only to how Peppler responded to Plaintiff's complaints.

### 2.    Deliberate Indifference

To prove her equal protection claim under a deliberate indifference theory, Plaintiff must show that she "was subjected to discriminatory peer harassment" and that Peppler "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known

circumstances." *Stiles*, 819 F.3d at 852 (citations omitted).  For the same reasons

discussed above with regard to Plaintiff's substantive due process claim, the record

fails to show that Peppler acted with deliberate indifference to Plaintiff's

complaints of harassment.

     **C.**    **Free Exercise Clause**

     The First Amendment, made applicable to the States through the Fourteenth

Amendment, provides that "Congress shall make no law . . . prohibiting the free

exercise [of religion]."  U.S. Const., amend. I.  "The Sixth Circuit has held that the

Free Exercise Clause is 'predicated on coercion.'"  *Nikolao v. Lyon*, 875 F.3d 310,

316 (6th Cir. 2017) (quoting *Mozert v. Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058,

1066 (6th Cir. 1987)); *see also Sch. Dist. Of Abington Twp. v. Schempp*, 374 U.S.

203, 223 (1963) ("The Free Exercise Clause . . . withdraws from legislative power,

state and federal, the exertion of any restraint on the free exercise of religion.  Its

purpose is to secure religious liberty in the individual by prohibiting any invasions

thereof by civil authority.").  An individual's rights under the Free Exercise Clause

are violated "when the state compels her 'to do or refrain from doing an act

forbidden or required by one's religion, or to affirm or disavow a belief forbidden

or required by one's religion.'"  *Nikolao*, 875 F.3d at 316 (quoting *Mozert*, 827

F.2d at 1066).  The Supreme Court has explained that "it is necessary in a free

exercise case for one to show the coercive effect of the [official conduct] as it

operates against [the individual] in the practice of his [or her] religion." *Schempp*, 374 U.S. at 223.

Therefore, the Free Exercise Clause is not violated simply because the government requires a person to be exposed to ideas he or she finds objectionable on religious grounds. *Mozert*, 827 F.2d at 1065. "[G]overnmental actions that merely offend or cast doubt on religious beliefs do not on that account violate free exercise. An actual burden on the profession or exercise of religion is required." *Id.* at 1068 (quoting *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1543 (9th Cir. 1985) (Canby, J., concurring), *cert. denied*, 474 U.S. 826 (1986)).

Plaintiff's free exercise claim against Peppler is based on Peppler advising Plaintiff to conform to the style habits of her peers and "not supporting her beliefs, advocating on her behalf against the offending students, or taking any affirmative action against the offending student[s] to alert them that their actions would not be tolerated and that they were otherwise violating school policies." (Pl. Resp. Br., ECF No. 53 at Pg ID 487.) Plaintiff does not allege—much less present evidence to show—that Peppler's conduct coerced her to do or not do anything forbidden or required by her religion. Her free exercise claim therefore fails. *See Nikolao*, 875 F.3d at 316 (instructing the district court on remand to dismiss the plaintiff's claim under the Free Exercise Clause because, despite being "exposed to religious information with which she did not agree," the plaintiff "has given no indication

that [governmental conduct] *coerced* her into doing or not doing anything")
(emphasis in original).

>    **D.    Gross Negligence**

Plaintiff alleges that Peppler's response to the bullying of Plaintiff by her
peers, which Plaintiff claims "allowed and encouraged a culture of religious-based
harassment to fester and continue" (Pl. Resp. Br., ECF No. 53 at Pg ID 491),
constituted gross negligence in violation of Michigan law.  Peppler asserts that she
is entitled to immunity from this claim under Michigan's Government Tort
Liability Act, Michigan Compiled Laws § 691.1407, as her conduct did not amount
to gross negligence and was not the proximate cause of Plaintiff's alleged injuries.

The statute provides governmental employees with immunity from tort
liability for injuries they cause during the course of their employment provided
their conduct "does not amount to gross negligence that is *the* proximate cause of
the injury or damage."  *Id*. § 691.1407(2) (emphasis added).  The alleged
misconduct must be "the one most immediate, efficient, and direct cause preceding
the injury."  *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000); *see
also Jasinski v. Tyler*, 729 F.3d 531, 544 (6th Cir. 2013) (analyzing gross
negligence claim under Michigan law and finding that the most immediate, direct,
and efficient cause of death of the victim was the victim's father, not the child
protective service employees).

"Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id*. § 691.1407(8)(a). The Michigan Court of Appeals has provided:

> Simply alleging that an actor could have done more is insufficient under Michigan law [to state a claim of gross negligence], because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.
>
> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge.

*Tarlea v. Crabtree*, 687 N.W.2d 333, 339-40 (Mich. Ct. App. 2004) (footnote omitted); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quoting *Tarlea*).  Regardless of whether Peppler's conduct met this standard (which the Court believes it did not), her conduct was not *the* proximate cause of Plaintiff's injuries.  The assault and bullying of Plaintiff by her peers were the most immediate and direct causes of Plaintiff's injuries.  *See Robinson*, 613 N.W.2d at 319 (holding that police officers in pursuit of an underage driver who was operating a car recklessly were immune from liability for injuries caused to the driver's innocent passengers as the proximate cause of those injuries was not the

23

officers' decision to chase the driver, but rather the reckless conduct of the fleeing driver); *see also C.R. v. Novi Cmty. Sch. Dist.*, No. 14-14531, 2017 WL 528264, at *23 (E.D. Mich. Feb. 9, 2017), order clarified, No. 14-14531, 2017 WL 914251 (E.D. Mich. Mar. 8, 2017) (finding that teacher's omission was not the one, most immediate, and efficient direct cause of student's injury, it was instead the student who assaulted the victim); *McCarrick v. Lapeer Cmty. Sch.*, No. 12-11654, 2013 WL 4531261, at *6 (E.D. Mich. Aug. 27, 2013) (finding that the school principal was not the proximate cause of a student's injuries from another student's assault).

## V.    Conclusion

For the reasons stated, the Court concludes that Plaintiff fails to show that Peppler violated her constitutional rights.  The Court further concludes that, under Michigan law, Peppler is entitled to immunity with respect to Plaintiff's gross negligence claim.

Accordingly,

**IT IS ORDERED** that Defendant Peppler's motion for summary judgment (ECF No. 49) is **GRANTED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: April 16, 2022

24